UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

HAROLD THOMAS,
        Plaintiff,        Civil Action No.: 14-10752
                            Honorable Gershwin A. Drain
v.                           Magistrate Judge Elizabeth A. Stafford

DUANE ALLEN and
DIANE ADAMS,

        Defendants.
_____/

## REPORT AND RECOMMENDATION TO DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [14]

### I.    INTRODUCTION

In Plaintiff Harold Thomas's *pro se* verified complaint, he alleges that dentist Dr. Duane Allen and dental hygienist Diane Adams violated his First and Eighth Amendment rights by denying him the new partial that he has sought to address dental pain and complications that have been ongoing since 2012. Dr. Allen and Adams move for summary judgment. The record presents genuine issues of material fact, and a jury could reasonably find in Thomas's favor. Thus, the Court RECOMMENDS DENYING Defendants' motion for summary judgment. [14].

## II. BACKGROUND

### A. Factual

Thomas is a prisoner housed at the Michigan Department of Corrections ("MDOC") G. Robert Cotton Correctional Facility ("JCF") in Jackson, Michigan. In June 2012, while housed at his prior facility, Thomas broke his partial denture, causing him pain and making it difficult to eat. He immediately sent correspondence requesting medical care and he was placed on the dental exam list. He sent another "kite" in August 2012 regarding a cavity that was causing "excruciating pain". [15, Pg. ID 76]. As a result, he was seen by Dr. Stephen Phillips for an emergency dental examination. Dr. Phillips diagnosed Thomas with "poss. trauma from occlusion[1]/poss. early stages of irreversible pulpitis,"[2] adjusted Thomas's occlusion and instructed him to request dental care via a kite if the pain worsened or persisted. [Id].

After being transferred to JCF, Thomas sent a kite on February 25, 2013 requesting "to be seen soon for poss repair," and Dr. Allen performed an "assessment" of Thomas on March 21, 2013. In his verified complaint

---

[1] Occlusion refers to the way teeth fit together; the bite.
[2] Pulpitis is inflammation of dental pulp due to deep cavities, trauma or extensive dental repair. Irreversible pulpitis results in spontaneous or lingering pain, infection, and sensitivity to pressure and percussion. *See* http://www.merckmanuals.com/professional/dental_disorders/common_dental_disorders/pulpitis.html

2

and in the affidavit Thomas submits with his response to Defendants' motion, he alleges that he advised Dr. Allen at that time that his broken partial caused him pain with eating and his gums to bleed. He claims that Dr. Allen prescribed a treatment plan that included an extraction, a teeth cleaning, and fitting for a new partial. Dr. Allen's treatment notes state that Thomas's partial had been broken for about a year and was beyond repair, and he "recommend[ed] fabrication of a new P[artial]." [*Id.* at 76-7]. Nonetheless, in his affidavit, Dr. Allen denies that he prescribed any treatment plan at all to enable Thomas to receive a new partial. [14-2, Pg ID 59].

On July 5, 2013, Thomas's daily schedule included a 9:30 a.m. appointment with a dental hygienist for cleaning. [20, Pg. ID 120]. Yet, by affidavit, Adams claims that the purpose of the appointment was to take x-rays and update Thomas's dental records. According to Adams, Thomas could not have been scheduled for a cleaning, as he was first required to undergo an exam by a dentist who would prescribe this service. [14-4, Pg ID 69]. Contrary to the claim that an examination was required before the cleaning, a grievance investigator described the July 5 appointment as being "for dental xrays and teeth cleaning and scheduling of the future dental examination." [20, Pg ID 118].

What actually occurred at this appointment is also in dispute. MDOC policy states that in order to request routine or urgent dental care, prisoners must fill out a "Prisoner Request for Health Care Services form (CHJ-549)" and be charged a fee for dental services they request. [14-3, Pg. ID 64]. The prisoner's signature on the CHJ-549 form serves as the prisoner's agreement to have funds removed from his or her account. Importantly, however, "A prisoner who does not sign the [CHJ-549] form shall be provided necessary health care services, but a hearing shall be conducted . . . to determine if the funds should be removed from the prisoner's account to pay the fee." [14-5, Pg. ID 73].

Thomas states that, at the July 5 appointment, Adams informed him that he had not been charged for any dental services since 2008 and that she would have to charge him a $5 copay for his teeth cleaning. Thomas states that he replied that he had already signed the CHJ-549 form to authorize the required copayment and that, regardless, MDOC policy prohibits her from denying him treatment over copay issues. He asserts that after this discussion, and after he informed Adams of his intent to file a grievance over the issue, she refused to treat him, indicating she would not clean his teeth because Dr. Allen was not present.

Adams disputes that she denied Thomas's treatment because he

4

refused to agree to pay the $5 co-pay.  She states that she informed Thomas that there was no dentist available at that time to conduct an examination, and that "he is not charged until he sees the dentist and has an exam." [14-4, Pg ID 69].  Adams says that she asked Thomas to leave because he became argumentative, and he complied. [14-4, Pg. ID 69-70].  Thus, according to Adams' affidavit, without a dentist present, Thomas could not have had an examination and could not have been charged for the July 5 visit, and the appointment was terminated due to Thomas being argumentative.

     However, documentary evidence in the record supports Thomas's claim that he was dismissed from the July 5 appointment and denied treatment thereafter because he disputed having to pay the $5 copay.  For example, after the July 5 appointment with Adams, Thomas sent a CHJ-549 form to Dr. Allen the same day stating that Dr. Allen previously had indicated that he would be fitted for a partial, but that Adams said on July 5 that he needed to have his teeth cleaned first.  Thomas said that Adam treated him unprofessionally and that, after a disagreement, she claimed that she could not clean his teeth without Dr. Allen being present.  Thomas said, "I just want partial now."  Although Thomas directed the form to Dr. Allen, Adams wrote the responsive "instruction to prisoner" in which she

5

reiterated that Thomas had not paid any copays since before 2008, and concluded, "You must have an exam by a dentist and pay $5.00 copay prior to any treatment except emergencies." [20, Pg ID 122]. Thus, Adams' explicitly conditioned Thomas's receipt of a new partial and any nonemergency treatment on his agreement to pay the copay.

Further, a grievance investigator later found that Thomas was dismissed from the July 5 appointment "[b]ecause Thomas refused to undergo a dental examination and accept the $5 copayment he was dismissed from the dental clinic." [20, Pg ID 118]. This finding contradicts Adams' claims that she did not deny Thomas treatment because he refused to agree to the $5 copayment, and that he was dismissed from the appointment only because he was argumentative.

Another discrepancy in the record concerns the allegation that Thomas refused to undergo a dental examination on July 5. Adams told Thomas during his appointment that day that his prior visits with dentists regarding the partial were not examinations, and that he needed an examination before he could be put on the list to receive a new partial. [15, Pg ID 77]. According to Adams' notes, Thomas said that he would go ahead with the examination, but that she replied that there was no dentist available. [Id.] In other words, Thomas did *not* refuse an exam on July 5,

but grievance records represent that he did. [20, Pg ID 110 ("Mr. Thomas believes he should get a new partial denture w/o undergoing a dental exam and/or $5 copayment."); 20, Pg ID 118 ("Because Mr. Thomas refused to undergo a dental examination and accept the $5 copayment he was dismissed from the clinic.")].

Moreover, the MDOC defendants do not explain why Thomas's prior visits with Dr. Phillips and Dr. Allen were not "examinations" that would allow him to be put on the list to receive a new partial. In particular, Dr. Phillips' "emergency exam" of Thomas on August 30, 2012 included x-rays, an oral exam and a review of Thomas's health history. [15, Pg ID 76]. Why was that not sufficient?

Thomas claims to have submitted another CHJ-549 form on or about July 9, authorizing the co-payment. Consistently, the medical notes reflect that Thomas was directed to "kite for his dental exam" on July 8, and that a kite was received the same day. [15, Pg. ID 77]. Nonetheless, Thomas's appointment with Dr. Allen on July 24 was identified as a "consultation" regarding the partial rather than an exam. According to Thomas, Dr. Allen told him on July 24 or 25 that dental services would be withheld unless and until Thomas dropped his grievance against Adams. Thomas asserts that he refused, and was then asked to leave the clinic. Thomas's grievance

against Dr. Allen regarding their July 24 interaction additionally indicates that he informed Dr. Allen that he was experiencing pain, bleeding, headaches and an inability to eat due to his dental problems. [20, Pg ID 112].

Dr. Allen denies that he threatened to withhold dental care. [14-2, Pg. ID 59]. Further, in his treatment notes and affidavit, Dr. Allen maintains that Thomas was asked to leave the clinic on July 24 because he became argumentative when he was told that he would have to have an exam, cleaning and possibly restorative treatment if he wanted his partial replaced. [15, Pg. ID 78; 14-2, Pg ID 59].

Thomas states that he was instructed to send another CHJ-549 form, which he did on August 6, 2013, and he had another "consultation" on August 9, 2013, this time with Dr. Isaiah Todd. Thomas allegedly asked Dr. Todd repeatedly why he was required to send another kite to request an exam when he had already done so and been charged. Dr. Todd responded that he had not been charged anything since 2008, and that he "would be seen for exam and treatment plan for a more durable upper partial when he send[s] the kite as previously requested. Patient said he would send the kite." [15, Pg. ID 78].

Thomas alleges that, on August 12, 2013, he was called to the dental

clinic and informed by its staff that he would have to sign off on the grievance he filed against Dr. Allen if he wanted treatment. When he refused, "Ms. Drake" instructed him to leave the clinic and threatened to place him in segregation or have him transferred to an Upper Peninsula prison if he filed any more complaints against staff. Another inmate testifies by affidavit that he overheard that threat. [20, Pg. ID 116]. Notes from this appointment reflect that Thomas was "seated in dental chair for his dental exam," and given "a kite form to fill out for the dental exam, which will be sent to prisoner accounting." [15, Pg. ID 78]. The notes reflect that Thomas then said "I won't sign anymore papers" and he "became argumentative and was released." *Id.* In his affidavit, Dr. Allen states that Thomas became argumentative because he was "required to authorize the copayment" for the planned August 12 exam, and was told to leave the dental clinic. [14-2, Pg ID 60].

Subsequently, Thomas was treated by a psychiatrist at the prison for pain and an inability to sleep due to lack of dental treatment. Treatment notes from these sessions reveal that he showed the doctor a kite he had sent where he "express[ed] his interest in getting an appointment to have his dental problems addressed and indicating a willingness to pay in advance for his appointment." [20, Pg. ID 113]. At a subsequent

9

appointment, the notes reflect that Thomas "was confused about how he could prepay for his dental care," that the doctor contacted the dental office and was informed that "traditionally the request for copay came along with the kite asking for service to be performed." [20, Pg. ID 114].

According to Thomas, he has "filled out at least a dozen requests for dental care, have signed copay agreements and have not been cared for in over two years." [20 Pg. ID 109]. Thomas requested copies of his CHJ-549 healthcare kits from MDOC, but Dr. Allen denied the request because those documents are not maintained within his dental records, but in a separate administrative file. [20, Pg. ID 127-28].

### B. Procedural

Thomas filed his complaint against Defendants, alleging violations of his First and Eighth Amendment rights as a result of retaliation against him for grieving Defendants and Defendants' deliberate indifference to his serious medical needs. Defendants move for summary judgment, but only address Thomas's deliberate indifference claim, not his retaliation claim. Their motion should be denied.

## III. Legal Standard

Federal Rule of Civil Procedure 56 provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986); *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). A fact is material if it could affect the outcome of the case based on the governing substantive law. *Liberty Lobby*, 477 U.S. at 248. A dispute about a material fact is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

    If the movant satisfies its burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001). The opposing party "may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street*

11

*v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id.* (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id.* at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). Moreover, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252.

In deciding a summary judgment motion, the Court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88(1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court need only consider the cited materials, but it may consider other evidence in the record. Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

## IV. ANALYSIS

### 1. First Amendment Retaliation

Thomas's verified complaint and his affidavit accompanying his response to Defendants' motion allege that, subsequent to him grieving Defendants, he was repeatedly denied medical care despite the fact that he had requested exams and signed authorizations to release the required co-payment. Retaliation against a prisoner in response to his or her exercise of a constitutional right violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). Defendants do not move for summary judgment on this claim, and Thomas's allegations state a plausible claim for relief. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir.2001)(filing of a grievance constitutes constitutionally protected conduct under the First Amendment.); *O'Brien v. Michigan Dep't of Corr.*, ___ Fed. Appx. ___, 2014 WL 7533852, at *4 (6th Cir. 2014)(denial of requested medical treatment or examinations constitutes adverse action that would likely deter a prisoner from continuing protected conduct). Therefore, this claim should survive dismissal.

### 2. Eighth Amendment

Defendants argue that they are entitled to summary judgment on Thomas's Eighth Amendment claim. The Eighth Amendment prohibits

13

cruel and unusual punishment, which includes a prison official's deliberate indifference to an inmate's serious medical needs. *Estelle v. Gambel*, 429 U.S. 97, 106 (1976). Thus, there is both an objective component, the identification of a serious medical need, and a subjective one, a showing that the official possessed a "sufficiently culpable state of mind," more than negligence or even gross negligence and being "tantamount to intent to punish." *Broyles v. Correctional Medical Servs., Inc.*, 478 Fed. Appx. 971, 975 (6th Cir. 2012) (internal citations omitted).

In evaluating a claim of deliberate indifference, federal courts "distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)). Where medical treatment was provided, and a prisoner claims that it was inadequate, "courts are generally reluctant to second guess medical judgments." *Id.* (citation omitted). It is possible, however, for medical treatment to be "so woefully inadequate as to amount to no treatment at all." *Id.* (citation omitted).

Defendants concede for purposes of this motion that Thomas's broken partial constitutes a serious medical need. [14, Pg. ID 45]. They

14

only argue that their actions did not amount to deliberate indifference and contend that Thomas is entirely responsible for his inability to obtain a new partial. "Thomas simply needs to follow the proper procedure to obtain the routine dental service he desires; to wit, request an exam and agree to the $5 copay." [14, Pg ID 49]. Thomas counters that he did, on multiple occasions, authorize such co-payments and that he was still refused services.

Regardless, Defendants do not have the right to deny Thomas dental care because he disputes the $5 copay. MDOC's own policy states that necessary dental treatment will not be withheld on the basis of refusal to sign the co-pay authorization. Furthermore, although it is constitutional to charge a prisoner for medical care, the provision of necessary care may not be conditioned on the inmate's ability or willingness to pay. *Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir. 1997); *White v. Corr. Med. Servs.*, 94 Fed. Appx. 262, 264 (6th Cir. 2004). Moreover, "[d]eliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that result in interminable delays and outright denials of medical care to suffering inmates." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citation and internal quotation marks omitted). *See also Mabry v. Antonini*, 289 Fed. Appx. 895,

901 (6th Cir. 2008) (same).

As outlined above, Thomas was repeatedly told that he could not go forward with his dental treatment unless he agreed to the $5 copay. Adams explicitly told him that he would have to agree to the copay prior to any treatment except emergencies. [20, Pg ID 122]. Additionally, although Thomas had an emergency exam in August of 2012 that included x-rays, an oral exam and review of his health history, he was repeatedly told that he needed to have another exam before he could be placed on the list to receive a partial. But, whenever he requested dental care, the appointments were identified as assessments or consultations instead of exams, and he was told that he would not receive an exam without paying the copay. Thomas was seated in the dental chair for a dental exam on August 12, 2013, but according to Dr. Allen, he was "required to authorize the copayment" first. [14-2, Pg ID 60]. So, from August 2012 until at least February 2014, when he filed his complaint,[3] Thomas suffered a complete denial of dental care.

Defendants' argument that Thomas has failed to place into the record "verifying evidence of a detrimental effect" on his health is wholly without merit. First, such verifying evidence is relevant to the objective component

---

[3] As of the date of this Report and Recommendation, there is no indication that Thomas has received a new partial.

of the Eighth Amendment analysis, and Defendants conceded that Thomas's dental concerns constituted a serious medical condition so as to satisfy the objective component. *See Napier v. Madison Cnty*, 238 F.3d 739, 742 (6th Cir. 2001) (verifying evidence goes to objective component). Additionally, Defendants' claim that Thomas was required to show that the delay caused a permanent residual injury is not true. "For instance, *Estelle* makes clear that if 'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Monmouth*, 834 F.2d at 347 (quoting *Estelle*, 429 U.S. at 102).

In this case, the evidence shows that Thomas was in significant pain and was diagnosed with possible trauma from occlusion and early stages of irreversible pulpitis as early as August 2012. Dr. Allen himself determined that Thomas needed a new partial in March of 2013. Moreover, Thomas's July 24, 2013 grievance referred to his complaints of pain, an inability to eat, bleeding and headaches. Under these circumstances, a reasonable jury could find that Defendants refusal to provide Thomas any treatment constituted unnecessary and wanton infliction of pain.

17

For these reasons, the Court finds that there is a material question of fact as to whether Defendants acted with deliberate indifference to Thomas's serious medical need and recommends that summary judgment be denied.

### 3. Qualified Immunity

Defendants' qualified immunity argument relies entirely on their conclusion that Thomas has not stated a claim that his rights under the Eighth Amendment were violated (a conclusion with which the Court finds there to be a material dispute of fact). Their motion is silent with respect to the question of whether the right was clearly established or whether their actions were reasonable under the circumstances. Under similar circumstances, courts have denied defendants' claims for qualified immunity.

For example, in *Pasley v. Conerly*, No. 08-cv-13185, 2010 U.S. Dist. LEXIS 104763, at *81-86, 2010 WL 3906120, at *25-26 (E.D. Mich. Sept. 10, 2010), the defendant's claim of qualified immunity relied solely on an argument that there was insufficient evidence to establish a violation of the plaintiff's First Amendment rights. Since the court found there was sufficient evidence of a First Amendment violation, it rejected the defendant's qualified immunity claim without further analysis. This Court

18

agrees with that approach, and finds that Defendants' claim for qualified immunity should be denied.

## V. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS DENYING** Defendant Duane Allen and Diane Adams's motion for summary judgment. **[14]**.

Dated: February 12, 2015  s/Elizabeth A. Stafford
Detroit, Michigan  ELIZABETH A. STAFFORD
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection

must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 12, 2015.

> s/Marlena Williams
> MARLENA WILLIAMS
> Case Manager